IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ZURICH AMERICAN INSURANCE, et al.
    Plaintiffs,

v.

LORD ELECTRIC CO. OF PUERTO RICO, et al.

    Defendants.

Civil No. 09-1111 (SEC)

**OPINION AND ORDER**

Before the Court are third party defendant Chardon/Hato Rey Partnership S.E.'s ("Chardon") motion to dismiss (Docket # 230), third-party plaintiffs Electro Mechanical Corporation d/b/a/ ("Federal Pacific"), Alarm & Control System Co. d/b/a/ ("Acotrol"), together with Rimco Inc.'s ("Rimco") oppositions thereto (Dockets # 233, 239 & 244), and Chardon's replies (Dockets # 242, 247 & 249). Also before this Court is third-party defendant Securitas Security Services of Puerto Rico, Inc.'s ("Securitas") unopposed motion to dismiss (Docket # 232). After reviewing the filings, and the applicable law, Chardon motion is **GRANTED**, while Securitas' is **DENIED**.

**Factual and Procedural Background**

A brief introduction to the underlying facts of this case suffices to set the stage for the analysis. The facts, as alleged by the plaintiffs in their complaint, are as follows:

On February 6, 2009, Zurich American Insurance Company ("Zurich"), UBS Financial Services Inc. ("UBS"), and Firemans' Fund Insurance Company ("Firemans) (collectively, "Plaintiffs") filed this diversity suit against a multitude of defendants. Docket # 1. According to the complaint, on February 12, 2008, a substantial amount of diesel overflowed from the day tanks of the American International Plaza's (the "Building") backup generators. Id. at ¶ 43.

**CIVIL NO. 09-1111 (SEC)**                                                                 Page 2

What ultimately became a diesel spill (the "Spill"), in turn, propagated into and throughout parts of the building, causing damages to tenants UBS and O'Neill & Borges' ("O'Neill") property, as well as disrupting their business operations. Id. [1] Plaintiffs sued, among other defendants, Federal Pacific, Acotrol, and Rimco, alleging that their negligence caused or aggravated the spill, and consequently, their damages.

With respect to Rimco, a Puerto Rican corporation distributing diesel-powered generators, the complaint essentially states that Rimco failed to ensure that the emergency generators operated properly and safely. Id. at ¶¶ 8, 47 & 58.[2] Regarding Acotrol, a Puerto Rico-based corporation that deals with alarm systems for use with backup generators, Plaintiffs essentially contend that Acotrol failed to install, inspect, or otherwise maintain the alarm systems that malfunctioned. Id. at ¶¶ 18-19 & 78.[3]

Finally, as to Federal Pacific, a corporation based in Virginia that manufactures and designs commercial building transformers, Plaintiffs allege that Federal Pacific's negligence lies in its failure to properly manufacture and design the transformer (the "Transformer") that allegedly malfunctioned in the Building. Id. According to the complaint, the Transformer's failure, which Plaintiffs attribute to its incompatibility with humidity, triggered a domino effect that climaxed with the Spill. Id.

---

[1] Both Zurich and Firemans brought subrogation claims for payments made to their respective policy holders: UBS (insured by Zurich), and O'Neill (insured by Firemans). Id. at ¶¶ 2-5. UBS, however, is suing independently from Zurich, alleging damages uncovered by Zurich's insurance limit.

[2] Rimco is the Caterpillar dealer for Puerto Rico, the U.S. and the British Virgin Islands. Docket 226, ¶ 1. Rimco alleges that it sold—but did not install—the generator day tanks. Id. at ¶¶ 9-11.

[3] Acotrol explains that it was hired around 1992 to install, test, maintain, and repair the Building's fire system. Docket # 227,¶10. It alleges, moreover, that it never had anything to do with the alarm system for the Building's generator or day tanks. Id. at ¶ 8.

**CIVIL NO. 09-1111 (SEC)**                                                                 Page 3

Against this factual backdrop, the third-party plaintiffs filed separate third-party complaints against Chardon, a special partnership that owns the Building. Docket # 67, ¶ 8.

Rimco's third-party complaint came first. In a nutshell, it alleged that Chardon was the sole party responsible for the damages caused to Plaintiffs because, among other things, Chardon failed to connect or maintain the day tank's drainage system. Docket # 37, ¶¶ 20 & 24-26. This, according to Rimco, caused the diesel to "seep down inside the office building." Id. at ¶ 20.   Tracking Rimco's allegations against Chardon, Acotrol and Federal Pacific subsequently followed suit. Docket # 134, ¶¶ 12-13; Docket # 136, ¶¶ 18-20. Notably, Acotrol included two meager allegations against another nonparty: Securitas.

Chardon timely moved to dismiss the third-party complaints. Dockets # 67, 152 & 153. The core of Chardon's defense was that, pursuant to Fed. R. Civ. 14(a)(1), these third-party complaints improperly impleaded it. See e.g., Docket # 152, p. 4. Chardon's proffer rested on two contractual clauses in effect at the time of the Spill, which were included in tenants UBS and O'Neill's lease contracts with Chardon (the "Lease Contracts"). In pertinent part, the Lease Contracts provided (1) a waiver of subrogation rights, by virtue of which, UBS and O'Neill waived any right of recovery against Chardon for any damage that may occur to the leased premises or the Building; and (2) a "Casualty Damage" that made Chardon immune for damages suffered by its tenants. See Docket # 67 at ¶¶ 9-13.[4] Hence, Chardon alleged that, because there was no derivative liability against it, the third-party complaints ran afoul of Rule 14. See Docket # 230, p. 3.

---

[4] The Waiver of Subrogation Rights provides in relevant part: [L]andlord and Tenant each hereby waives any and all rights of recovery, claim, action, or cause of action, against the other . . . for any loss or damage that may occur to the Premises . . . or the Building . . . ." Docket # 249-3, Exh. 1.1, p. 42. Similarly, the Casualty Damage clause states that "Landlord shall not be liable for any inconvenience or annoyance to Tenant or injury to the business of Tenant resulting in any way from damage or the repair thereof . . . ." Id. at p. 43; Exh. 2, pp. 34-35; Exh. 2.3, pp. 18-19.

**CIVIL NO. 09-1111 (SEC)** Page 4

Adopting Chardon's Rule 14 defense, Securitas moved to dismiss Acotrol's third-party complaint. Docket # 154. Pointing to the scarcity of allegations against it, Securitas countered that Acotrol's third-party complaint contained no averments to conclude that Securitas was contractually bound to service the Building. Id. at ¶¶ 6-7.

Although Acotrol never opposed Securitas' motion to dismiss, the third-party plaintiffs did protest Chardon's request for dismissal. See Dockets # 78, 161, 162.[5] Rimco reiterated its claims against Chardon were imbricated with the original complaint; according to Rimco, such interrelation satisfies Rule 14. Docket # 78, p. 12-13. In opposition, Acotrol took a different route this time around: it argued, albeit with no specificity and without much in the way of a legal argument, that Chardon violated certain clauses of a purported contract between these two. Dockets # 161, p. 6. Federal Pacific, meanwhile, explained that it had never alleged that Chardon should be directly responsible to Plaintiffs. Docket # 162, p. 8. Instead, Federal Pacific contended, Chardon was responsible to it for whatever amount it may be held liable to Plaintiffs. Id.

After several procedural nuances, Rimco filed an amended third-party complaint against Chardon. Docket # 226.[6] For its part, Federal Pacific's amended complaint incorporated Rimco's newfound allegations against Chardon. Docket # 228. Acotrol also filed its amended third-party complaint against Chardon and Securitas. Docket # 227. This time, however, Acotrol shed more light on its allegations against Securitas, arguing that Chardon had contracted with

---

[5] However, Acotrol filed an amended complaint against Securitas, expanding its allegations against Securitas. Docket # 156. Securitas never moved to dismiss Acotrol's second amended complaint.

[6] Rimco's amended third-party complaint added, among other things, that, "[t]hrough their building engineer and his personnel, [Chardon] negligently decided not to close the diesel pump that continued to feed the spill after it was originally detected, allowing more than half of the total diesel spill while it was avoidable." Id. at ¶ 29.

Securitas for the latter to perform the former's duties of overseeing the operation of the Building and its equipment. Id. at ¶ 14.

On November 4, 2011, Chardon filed the instant consolidated motion to dismiss the amended third-party complaints, rehashing its previous arguments.[7] In opposition, Federal Pacific avers that because the Lease Contracts cannot affect its rights, Chardon is not immune from Federal Pacific's claims. Docket # 233, p. 4. Acotrol also opposed Chardon's motion, re-alleging old arguments. Docket # 239, p. 10.[8] Securitas, who again moves to dismiss Acotrol's amended third-party complaint, contends that Acotrol merely tries to "[d]ress up its allegations . . . but fails to correct the substance of the defect of the third-party complaint under [Rule 14]." Docket # 232, p. 1. Securitas' motion to dismiss stands unopposed.

**Standard of Review**

To survive a Rule 12(b)(6) motion to dismiss, Plaintiffs' "well-pleaded facts must possess enough heft to show that [they are] entitled to relief." Clark v. Boscher, 514 F. 3d 107, 112 (1st Cir. 2008).[9] In evaluating whether Plaintiffs are entitled to relief, the court must accept as true all "well-pleaded facts [and indulge] all reasonable inferences" in plaintiffs' favor." Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). The First Circuit has held that "dismissal for failure to state a claim is appropriate if the complaint fails to set forth factual allegations, either

---

[7] Chardon posits that "[n]othing in the Amended Third-Party Complaints changes the undisputed fact that the Leases of UBS and [O'Neill] contain clauses . . . that render Chardon immune from liability . . . ." Docket # 230, p. 4. And inviting this Court to consider the Lease Contracts without converting the instant motion into one for summary judgment, it contends that the authenticity of the clauses is undisputed, and the clauses are central to the third-party complaints. Id. at p. 2.

[8] Rimco, however, included a new procedural defense: the Court should convert Chardon's motion to dismiss into a summary judgment, as Chardon attached extrinsic material beyond the pleadings. Docket # 219, p. 4.

**CIVIL NO. 09-1111 (SEC)**                                                                 Page 6

direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Nevertheless, in judging the sufficiency of a complaint, courts must "differentiate between well-pleaded facts, on the one hand, and 'bald assertions, unsupportable conclusions, periphrastic circumlocution, and the like,' on the other hand; the former must be credited, but the latter can safely be ignored." LaChapelle v. Berkshire Life Ins., 142 F.3d 507, 508 (quoting Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir.1996)); Buck v. American Airlines, Inc., 476 F. 3d 29, 33 (1st Cir. 2007); see also Rogan v. Menino, 175 F.3d 75, 77 (1st Cir. 1999). Thus, Plaintiffs must rely on more than unsupported conclusions or interpretations of law, as these will be rejected. Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997) (citing Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)).

In Ashcroft v. Iqbal, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), the Supreme Court reaffirmed Twombly and clarified that two underlying principles must guide a court's assessment of the adequacy of pleadings when evaluating whether a complaint can survive a Rule 12(b)(6) motion. See Iqbal, 129 S. Ct. at 1949-50. First, the court must identify any conclusory allegations in the complaint as such allegations are not entitled to an assumption of truth. Id. at 1949. Specifically, the court is not obligated to accept legal conclusions set forth as factual allegations in the complaint. Id.

Moreover, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (quoting Twombly, 550 U.S. at 555); see also Peñalbert-Rosa v. Fortuño-Burset, 631 F.3d 592, 595 (1st Cir. 2011) ("[S]ome allegations, while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross the line between the conclusory to the factual."). In other words, "[a] plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action." Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

**CIVIL NO. 09-1111 (SEC)**                                                                 Page 7

Second, a complaint survives only if it states a plausible claim for relief. Id. (citing Twombly, 550 U.S. at 556). Thus, any nonconclusory factual allegations in the complaint, accepted as true, must be sufficient to give the claim facial plausibility. Id. A claim has facial plausibility when the pleaded facts allow the court to reasonably infer that the defendant is liable for the specific misconduct alleged. Id. at 1949, 1952. Such inferences must amount to more than a sheer possibility and be as plausible as any obvious alternative explanation. Id. at 1949, 1951. Plausibility is a context-specific determination that requires the court to draw on its judicial experience and common sense. Id. at 1950.

For its part, Fed. R. Civ. P. 14(a)(4) permits "[a]ny party to move to strike the third-party claim, to sever it, or to try it separately." Although this rule does not explicitly provide for a motion to dismiss third-party claims, "[t]he federal courts have entertained both motions to dismiss and to strike and have not drawn distinctions between them." 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure §1460 (3d ed. 2011) (hereinafter "Wright & Miller"); see also Kenny v. City of New York, No. 09–CV–14222011, WL 4460598, at *1 (E.D.N.Y. Sept. 26, 2011) ("[T]he form of or the name given to the motion is not significant, let alone determinative. Whenever a motion to dismiss or to strike, or to vacate, or for a judgment on the pleadings, or for a summary judgment actually challenges the desirability of the impleader, it will be treated accordingly.") (citation omitted).

**Applicable Law and Analysis**

As an initial matter, the Court must decide whether, at the motion to dismiss stage, it may consider documents unattached to the third-party complaints; in this case, the Lease Contracts that confer immunity to Chardon. See Docket # 249, Exhs. 2-10. Taking exception to Chardon's exhibits, Rimco claims that their evidentiary admissibility has not been established, and that, in order to properly consider the Lease Contracts, this Court should convert Chardon's motion

**CIVIL NO. 09-1111 (SEC)**                                                                                         Page 8

into one for summary judgment. Docket # 219, p. 4; Docket # 244, p. 2. For the reasons set forth below, the Court declines Rimco's invitation.

It is common ground that courts ordinarily may not consider documents that are outside of the complaint, unless the motion to dismiss is converted into one for summary judgment. E.g., Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993). But a court may consider "facts extractable from documentation annexed to or incorporated by reference in the complaint and matters susceptible to judicial notice." Rederford v. U.S. Airways, Inc., 589 F.3d 30, 34 (1st Cir. 2009) (quoting Jorge v. Rumsfeld, 404 F.3d 556, 559 (1st Cir. 2005)). Indeed, "[c]ourts have made narrow exceptions for documents the authenticity of which are not disputed by the parties; . . . or for documents sufficiently referred to in the complaint." Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).

The foregoing suffices to dispatch Rimco's argument quickly; its amended complaint explicitly alludes to Chardon's "release by [P]laintiffs." Docket # 226, ¶ 38. The Lease Contracts thus fall under the "documents sufficiently referred to in the complaint" exception. Watterson, 987 F.2d at 3.This, alone, authorizes this Court to consider the Lease Contracts, whose authenticity has never really been in debate here; the third-party plaintiffs have not questioned the validity of the Lease Contracts, although they have had over a year to do so. Having disposed of this non-starter, the Court will entertain the merits of Chardon and Securitas' motions to dismiss.

*Whether Acotrol, Federal Pacific, and Rimco's third-party complaints comport to Rule 14*

Rule 14(a)(1) of the Federal Rules of Civil Procedure prescribes when and how a defendant may sue a non-party: "A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it. . . ." Id. Or, per the First Circuit, this rule "contemplat[es] the availability of

third-party practice when a non-party is or may be liable for all or part of the plaintiff's claim against the defendant." Lehman v. Revolution Portfolio L.L.C., 166 F.3d 389, 393 (1st Cir. 1999) (internal quotation marks omitted). The rationale behind Rule 14 is to avoid "[u]nnecessary duplication and circuity of action . . . ." Id. at 394-95. Further, "[t]hird-party claims, being by definition logically dependent on the resolution of the original suit, fall within the court's ancillary jurisdiction over that suit." Metropolitan Life Ins. Co. v. Ditmore, 729 F.2d 1, 9 (1st Cir. 1984) (citations omitted)

From the clear language of this rule it follows that a third-party plaintiff is procedurally obliged to predicate its claims upon secondary or derivative liability. As succinctly put by the Seventh Circuit over thirty years ago, secondary liability "is a plain condition on the face of Rule 14." U.S. Gen., Inc. v. City of Joliet, 598 F.2d 1050, 1053 (7th Cir. 1979). In line with the foregoing, "[i]f [a] third-party plaintiff were found liable to plaintiff, then [it] has a right under substantive law to transfer [its] liability derived from the original complaint to third-party defendant." Lopez de Robinson v. United States, 162 F.R.D. 256, 258 (D.P.R. 1995). Among others grounds, "[a] contractual right of indemnification, or a [] right [to] contribution between joint tortfeasors are . . . rights under substantive law which allow a []third-party plaintiff to pass along all or a portion of his liability to third-party defendant." Lopez de Robinson, 162 F.R.D. at 258.

In contrast, a third-party plaintiff may not implead a third-party defendant purely on direct liability from the third-party defendants to the plaintiff. Arroyo Lopez v. Hosp. Dr. Dominguez, Inc., 262 F.R.D. 93, 96 (D.P.R. 2009); see also Wright & Miller §1455 (noting that "an impleader complaint . . . will be dismissed if it does not aver that the third-party defendant is or may be liable to the third-party plaintiff for all or part of plaintiff's claim against

**CIVIL NO. 09-1111 (SEC)**                                                                                           Page 10

defendant. . . .").[10] In other words, "the mere allegation that the third-party defendant is or may be liable to plaintiff will not sustain the complaint." <u>Torres-Mas v. Carver Boat Corp.</u>, 233 F. Supp. 2d 253, 257 (D.P.R. 2002) (citation omitted); <u>U.S. v. Government Development Bank,</u> 132 F.R.D. 129, 13 (D.P.R. 1990).

Accordingly, for their third-party complaints to conform to Rule 14, Rimco, Acotrol, and Federal Pacific must show that if they were found liable to Plaintiffs, then they would have a right under Puerto Rico law to transmit some of their liability to Chardon. As previously explained, the third-party plaintiffs impleaded Chardon on a theory of contribution between joint tortfeasors, maintaining that if they were found to be liable to Plaintiffs, Chardon would in turn be liable to contribute to any damages assessed against it.[11] The same holds true with respect to Acotrol's third-party complaint against Securitas. But because Rule 14 is a purely procedural mechanism, the Court turns to the substantive law of this jurisdiction to (1) ascertain whether Puerto Rico recognizes a right of contribution between joint tortfeasors; and (2) determine whether Chardon could plausibly have an obligation to contribute. <u>See</u> <u>D'Onofrio Const. Co. v. Recon Co.</u>, 255 F.2d 904, 906 (1st Cir. 1958) (Magruder, J.) (holding that "Rule 14 cannot be used to effect substantive results. . . .") (citing <u>Erie R.R. Co. v. Tompkins</u>, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)).

---

[10] This was not always the case, however. Prior to 1948, a third-party plaintiff could implead a nonparty solely on the latter's liability to plaintiff. But Rule 14 was amended in 1946 (effective March 19, 1948) to, among other things, suppress a defendant's right to implead a non-party directly liable to plaintiff. Hence, the rule now allows defendant only to implead a non-party who may be liable to the third-party plaintiff for all or some of "the claim against it." <u>See</u> Advisory Committee's Notes on 1946 Amendment to Rule 14, 28 U.S.C. App., pp. 7752-53.

[11] Rimco's amended third-party complaint states:"In the event that the Court enters judgment against [Rimco], [Chardon] is to be deemed joint tortfeasor and, under governing state law, [Rimco] is entitled to contribution from all joint tortfeasors, including [Chardon]." Docket # 227, ¶ 37. Federal Pacific and Acotrol's amended complaints include identical allegations.

**CIVIL NO. 09-1111 (SEC)**                                                                 Page 11

It should go without saying that, in diversity cases such as this one, state law governs the substantive outcome. E.g., Essex Ins. Co. v. BloomSouth Flooring Corp., 562 F.3d 399, 403 (1st Cir. 2009). And, when interpreting Puerto Rico law, federal courts employ the method and approach promulgated by the Commonwealth's Supreme Court. See Nat'l Pharmacies, Inc. v. Feliciano-de-Melecio, 221 F.3d 235, 241-42 (1st Cir. 2000). Last but not least, it is Puerto Rican hornbook law that the "[f]ield of [torts] is governed–both in form and in content–by the civil law system." Valle v. American International Insurance Co., 108 P.R. Dec. 692, 8 P.R. Offic. Trans. 735, 736 (1979).

In Puerto Rico, solidarity exists "when several people take part or cooperate in causing a wrong." Rodriguez v. Suzuki Motor Corp., 570 F.3d 402, 410 (1st Cir. 2009) (quoting Arroyo v. Hosp. La Concepcion, 130 P.R. Dec. 596, 604 (1992)). Put another way, in the Commonwealth, "joint tortfeasors are solidarily liable." Tokyo Marine & Fire Ins. Co. v. Perez y Cia., 142 F.3d 1, 6 (1st Cir. 1998) (citation omitted). In the same vein, "Puerto Rico is a comparative negligence jurisdiction that imposes joint and several liability on joint tortfeasors." Ruiz Troche v. Pepsi Cola, 161 F.3d 77, 87 (1st Cir. 1998) (citing Ramos Acosta v. Caparra Dairy, Inc., 116 P.R. Dec. 60, 62-64, 116 P.R. Offic. Trans. 78, 81-82 (1985)).

As a corollary of this principle, an aggrieved party may collect the entirety of the damages from one, some, or all of the joint tortfeasors. Ramos Acosta, 116 P.R. Offic. Trans. at 81.[12] But if a joint tortfeasor satisfies the full amount of the debt, then "[t]he right to contribution, known as 'nivelacion' is allowed as between joint tortfeasors whereby the one who

---

[12] The genesis of the concept of solidarity stems from Article 1097 of the Civil Code, which provides that "[a] creditor may sue any of the joint debtors or all of them simultaneously. The actions instituted against one shall not be an obstacle for those that may be brought subsequently against the others, as long as it does not appear that the debt has been collected in full." P.R. Laws Ann. tit. 31, § 3108.

has paid in excess of his percentage of liability may demand the corresponding proportional shares from the others." Wojciechowicz v. U.S., 474 F.Supp.2d 291, 295 (D.P.R. 2007) (citations omitted). Rule 14 provides this equitable vessel. See Fernandez v. Corporacion Insular De Seguros, 79 F.3d 207, 210 (1st Cir. 1996) (interpreting Puerto Rico law and observing that it allows defendants to implead a joint tortfeasor under Rule 14) (citation omitted); Blas v. Hospital Guadalupe, 167 P.R. Dec. 439, 452 (2006).

As previously noted, the bulk of Chardon's argument is that the Lease Contracts with Plaintiffs render it immune from any liability, and that this immunity disposes of the third-party complaints lodged against it. Docket # 230, p. 3. The threshold question here, therefore, is whether Chardon's immunity from Plaintiffs' entails that it is shielded from being solidarily liable. This determination is neuralgic because, if Chardon is deemed solidarily responsible—along with the third-party plaintiffs—for the damages alleged in the original complaint, then its motion must be denied. Conversely, if Chardon is not solidarily responsible under Puerto Rico law, then Chardon could never be "[l]iable to [the third-party plaintiffs] for contribution, [and] no such liability can be imposed upon [it] by the federal court on a third-party complaint under Rule 14." D'Onofrio Const. Co., 255 F.2d at 906. The Court thus turns to the effect of the exoneration clauses contained in the Lease Contracts.

As relevant here, "[a] hold-harmless agreement is one [in] which one party assumes all or part of the liability inherent in a situation, thereby relieving the other party of responsibility." Ramos-Roman v. Puerto Rico, No. 08–1378, 2011 WL 1484148, at *6 (D.P.R. Apr. 14, 2011) After carefully examining the Lease Contracts, Plaintiffs' unequivocal intention to waive any and all rights of recovery against Chardon is irrefragable. See Tokyo Marine and Fire Ins. Co., Ltd.,142 F.3d at 11 (noting that, based on Puerto Rico law, an exoneration "[c]lause will release a party from liability for future negligence only where the clause clearly and explicitly states

**CIVIL NO. 09-1111 (SEC)**                                                                 Page 13

so"). Moreover, the fact that Plaintiffs never included Chardon as a party in the original complaint further evinces the validity of this waiver. Importantly, the third-party plaintiffs have not even tried to cast a doubt on the Lease Contract's validity. Consequently, Chardon has been released from any liability in connection to Plaintiffs' damages.

Having held that Chardon is immune from Plaintiffs' claims, the Court analyzes the ramification of this release upon the third-party plaintiffs' claims against Chardon. As Chardon correctly contends, the legal relationship between it and the third-party plaintiffs—and thus their subsequent right to contribution—was established at the time of the Spill. Garcia v. Gobierno de la Capital, 72 P.R. Dec. 138, 143 (1951) (official translation provided by the parties at Docket # 225, Exh. 1) (holding that the legal relationship between joint tortfeasors is "established in its substance at the moment of the accident"). This is determinative because if Plaintiffs could have chosen to sue Chardon after the Spill, but instead elected to settle with it, then their settlement could not affect the third-party plaintiffs' right to implead Chardon, as correctly argued by the third-party plaintiffs. See generally Wright & Miller § 1447 (citing, *inter alia*, Bank of the West v. Estate of Leo, 231 F.R.D. 386, 389 (D. Ariz. 2005)) (holding that a non-settling defendant may bring a third-party complaint against a settling defendant).[13] But that is not the case here. Plaintiffs never settled—nor could they have—with Chardon. Instead, when the Spill occurred, Chardon was already immune from liability by virtue of the Lease Contracts.

---

[13] This type of settlement is usually "[f]ashioned along the lines of a Pierringer release." Rio Mar Associates, LP, SE v. UHS of Puerto Rico, Inc., 522 F.3d 159, 162 (1st Cir. 2008) (citing Pierringer v. Hoger, 21 Wis.2d 182, 124 N.W.2d 106, 112 (1963)) (construing this kind of release as discharging the settling tortfeasor entirely and releasing the non-settling one from responsibility for the settling tortfeasor's proportionate contribution of liability); see also Sagardia de Jesus v. Hosp. Aux. Mutuo, 177 P.R. Dec. 484, 498 (2009). In Rio Mar Associates, the First Circuit held that the plaintiff and a defendant cannot, by way of a Pierringer release, "[d]eny a third party rights that the third party . . . enjoys under the law." Id. at 164. But because no Pierringer release exists here, Rio Mar Associates does not control this instance. Accordingly, the third-party plaintiffs' contentions on this front are unavailing.

**CIVIL NO. 09-1111 (SEC)** Page 14

Cf. Rivera-Lopez v. Action Servs. Corp., 914 F. Supp. 17, 20 (D.P.R. 1996) (ruling that workers' compensation immunity conferred to an employer cannot be defeated indirectly through a third-party claim based on contribution). Because Plaintiffs could never have elected to sue Chardon, the third-party plaintiffs' right to contribution neither accrued nor ever existed.

As discussed, Plaintiffs were and still remain impeded from collecting any damages from Chardon. In this sense, Chardon cannot be solidarily liable to Plaintiffs under Puerto Rico law. As noted above, the third-party plaintiffs have no right to contribution against Chardon, as the latter could not have been liable to Plaintiffs. D'Onofrio Const. Co., 255 F.2d at 906. Given that no right to contribution exists here, Chardon cannot be secondarily or derivatively liable to the third-party plaintiffs. Hence, the third-party complaints fall as a matter of law. See Johnson v. Serra, 521 F.2d 1289 (8th Cir. 1975) ( "If the substantive law denies plaintiff a right of action against the third-party defendant, the third-party plaintiff cannot recover contribution from him either, even though the joint negligence of both defendants concurrently caused plaintiff's injury.").

To be sure, Rimco, Acotrol, and Federal Pacific can argue that Chardon caused or aggravated Plaintiffs' damages. In so doing, they avail themselves of the "[c]oncept of proportionate share setoffs . . . ." Rio Mar Associates, 522 F.3d at 165 (citing Szendrey v. Hospicare, P.R. Dec. 648, 657, P.R. Offic. Trans. 158 (2003)): every tortfeasor is ultimately responsible solely for its proportionate allotment of the total damages. Id. In due course, and assuming Plaintiffs succeed, the Court will tally each defendant's percentage of liability. And to the extent that the third-party plaintiffs prove Chardon's proportionate share of the overall damages, their contribution, in turn, will be reduced accordingly. See Merle v. West Bend Co., 97 P.R. Dec. 403, 406 (1969).

Because the third-party complaints fail to assert a derivative claim against Chardon, they contravene Rule 14. They are thus dismissed or stricken from the record.

*Whether Acotrol's third-party complaint against Securitas passes muster*

Given that no hold-harmless agreement exists between Securitas and Plaintiffs, Acotrol's third-party complaint need not suffer from the same procedural infirmity that plagued its claims against Chardon. Contrary to its allegations against Chardon, its contentions against Securitas do state a derivative claim; to wit, that Securitas aggravated or caused Plaintiffs' damages and, under a theory of contribution, Securitas could be derivatively responsible to Acotrol for a share of the latter's liability. See Docket # 227, ¶ 25.

Securitas' renewed motion to dismiss merely reiterates the two defenses contained in its original motion to dismiss: Acotrol's third-party complaint fails to (1) comply with Rule 14(a); and (2) state a claim upon which relief may be granted. See Docket # 154.

As noted above, Securitas' first argument falls short. With respect to its fallback, it should be noted that Securitas' original motion to dismiss successfully attacked Acotrol's original complaint, whose two perfunctory allegations clearly failed to pass muster under Rule 12(b)(6). But Acotrol filed two subsequent amended complaints, adding specific allegations that Securitas breached its duty to supervise, and timely detect the Spill.[14] By over relying in its

---

[14] Acotrol's amended third-party complaint alleges that Chardon hired Securitas' security services for the Building. Docket # 227, ¶ 13. According to Acotrol, Chardon contracted with Securitas for the latter to "[p]erform [Chardon's] duties of overseeing the operation of the [Building] and its equipment, and performing watch and security duties to attend such things as warning and emergency situations that may arise at the [Bulding] and its equipment." Id. at ¶ 14. Further, Securitas' employees were allegedly working at the Building when the Spill occurred. Id. at ¶ 15. According to the complaint, Securitas had the duty to notify Acotrol of "[a]ny occurrence, any emergency situation and/or malfunction of the fire alarm system and/or the alarm system related to the generators and day tanks of the [Buiding]." Id. at ¶ 18. Based on this alleged duty, Acotrol contends that Securitas "failed to verify all the premises, especially the main fire control panel located at the lobby of the [Building], in order to timely detect the overflow of the diesel." Id. at ¶ 21.

**CIVIL NO. 09-1111 (SEC)**                                                                 Page 16

original motion to dismiss, Securitas has failed to persuade this Court to dismiss the third-party complaint claims against it. In fact, after a third amended complaint, Acotrol has finally managed to include plausible allegations stating a derivative claim against Securitas; Acotrol successfully alleged that Securitas breached its duties by failing to verify the Building and thus failing to timely detect the Spill.

On a motion to dismiss, courts shall "accept[] as true all well-pleaded facts, analyzing those facts in the light most hospitable to the plaintiff's theory, and drawing all reasonable inferences for the plaintiff." New York v. Amgen Inc., 652 F.3d 103, 109 (1st Cir. 2011) (quoting United States ex rel. Hutcheson v. Blackstone Medical, Inc., 647 F.3d 377, 383 (1st Cir. 2011)). Here, the collective weight of Acotrol's factual allegations, nudge its claims against Securitas "across the line from conceivable to plausible," Iqbal, 129 S.Ct at 1951. Accordingly, Securitas' motion to dismiss is **DENIED**.

**Conclusion**

Because the third-party complaints fail to state a derivative claim against Chardon, thereby contravening Rule 14(a)(1), the Court **DISMISSES** or **STRIKES** them from the record. Securitas, on the other hand, has failed to meet its burden under 12(b)(6); its motion to dismiss Acotrol's third-party complaint is **DENIED**.

For these reasons, Chardon's motion to dismiss is **GRANTED**, while Securitas' is **DENIED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 15th day of December, 2011.

*S/ Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge