**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

ZURICH AMERICAN INSURANCE, ET
AL.,

    Plaintiffs,

        v.

LORD ELECTRIC CO. OF PUERTO
RICO, ET AL.,

    Defendants.

**Civil No. 09-1111 (SEC)**

**OPINION AND ORDER**

    Before the Court are defendants Rimco Inc. (Rimco) and Electrical Testing Services'
(ETS) motions for summary judgment (Dockets # 327 & 328), the plaintiffs' consolidated
opposition thereto (Docket # 337), and Rimco and ETS's replies (Dockets # 350 & 352).
Because genuine issues of material fact preclude resolution via summary judgment, these
motions are **DENIED**.

    **Standard of Review**

    The Court may grant a motion for summary judgment if the "movant shows that there
is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter
of law." Fed. R. Civ. P. 56(a); Kelley v. Correctional Medical Services, Inc., 707 F.3d 108, 155
(1st Cir. 2013). At this stage, it is axiomatic that courts "may not weigh the evidence," Casas
Office Machs., Inc. v. Mita Copystar Am., Inc., 42 F.3d 668 (1st Cir. 1994), but must construe
the record in the "light most flattering" to the nonmovant. Soto-Padro v. Public Bldgs.
Authority, 675 F.3d 1 (1st Cir. 2012). Courts must similarly resolve all reasonable inferences
in favor of the party opposing summary judgment. Id.

    Because the summary judgment inquiry is grounded in the factual evidence available,
one of its principal purposes "is to isolate and dispose of factually unsupported claims or

defenses." Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The Court may therefore consider "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(A). Inadmissible evidence, such as hearsay evidence considered for the truth of the matter asserted, is excluded at this stage. Hannon v. Beard, 645 F.3d 45, 49 (1st Cir. 2011).

Once the party moving for summary judgment has established an absence of material facts in dispute, and that judgment is proper as a matter of law, the burden shifts to the non-movant to "affirmatively point to specific facts that demonstrate the existence of an authentic dispute." Kenney v. Floyd, 700 F.3d 604, 608 (1st Cir. 2012) (internal quotation marks omitted); Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990). "A factual issue is 'genuine' if 'it may reasonably be resolved in favor of either party and, therefore, requires the finder of fact to make 'a choice between the parties' differing versions of the truth at trial.'" DePoutout v. Raffaelly, 424 F.3d 112, 117 (1st Cir. 2005) (quoting Garside, 895 F.2d at 48). A material fact, in turn, is one that may affect the outcome of the suit under the governing law. Maymí v. P.R. Ports Auth., 515 F.3d 20, 25 (1st Cir. 2008). The non-movant may not rest on conclusory allegations and improbable inferences. Shafmaster v. U.S., 707 F.3d 130, 135 (1st Cir. 2013); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). Neither "effusive rhetoric," Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997) nor "arguments woven from the gossamer strands of speculation and surmise," RTR Technologies, Inc. v. Helming, 707 F.3d 84, 93 (1st Cir. 2013), suffice to forestall the entry of summary judgment. In short, the non-movant must "point to competent evidence and specific facts to stave off summary judgment." Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London, 637 F.3d 53, 56 (1st Cir. 2011). Failure to shoulder this burden, "allows the summary judgment engine to operate at full throttle." Lawton v. State Mut. Life Assur. Co., 101 F.3d 218, 223 (1st Cir. 1996).

**Applicable Law and Analysis**

It should go without saying that, in diversity cases such as this one, state law governs the substantive outcome. <u>Erie R.R. Co. v. Tompkins</u>, 304 U.S. 64, 78 (1938); <u>Essex Ins. Co. v. BloomSouth Flooring Corp.</u>, 562 F.3d 399, 403 (1st Cir. 2009). This action arises in the "field of torts," which in turn is controlled—"[b]oth in form and in content—by the civil law system." <u>Valle v. American International Insurance Co.</u>, 8 P.R. Offic. Trans. 735, 736, 108 P.R. Dec. 692, 695 (1979) (Trías, C.J.). In turn, Article 1802 establishes that a "person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." P.R. Laws Ann. tit. 31, § 5141. A claimant seeking relief under this article must establish "(1) a negligent act or omission, (2) damages, and (3) a causal relationship between them." <u>Soc. Gananciales v. Padin Co., Inc.</u>, 17 P.R. Offic. Trans. 111, 117 P.R. Dec. 94 (1986). The scope of negligence under Article 1802 is broad—"as broad as the behavior of human beings... includ[ing] any fault that causes harm or injury." <u>Bonilla v. Chardón</u>, 18 P.R.Offic. Trans. 696, 709, 118 P.R. Dec. 599 (1987) (quoting <u>Colón v. Romero-Barceló</u>, 112 P.R.Dec. 573, 579 (1982)). Nevertheless, the existence of an injury or damages alone is not grounds for liability under Article 1802. A defendant will be liable only for those reasonably foreseeable consequences associated with his acts or omissions. <u>Wojciechowicz</u> v. <u>United States</u>, 576 F. Supp. 2d 241, 270-72 (D.P.R. 2008) (citing <u>De-Jesus-Adorno v. Browning Ferris Industries of Puerto Rico, Inc.</u>, 160 F.3d 839, 842 (1st Cir. 1998)), <u>aff'd</u>, 582 F.3d 57(1st Cir. 2009)

Regarding a defendant's omissions, those "that generate[] liability under Article 1802 happen [ ] when 'the law imposes a duty of care requiring the defendant to conform to a certain standard of conduct for the protection of others against unreasonable risk.'" <u>Zabala-Calderón v. U.S.</u>, 616 F. Supp. 2d 195, 199 (D.P.R. 2008). The duty of care may arise in one of three ways: "(1) by a statute, regulation, ordinance, bylaw, or contract; (2) as the result of a special

relationship between the parties that has arisen through custom; or (3) as the result of a traditionally recognized duty of care particular to the situation." De-Jesus-Adorno, 160 F.3d 842. Moreover, "the duty is defined by the general rule that one must act as would a prudent and reasonable person under similar circumstances." Vázquez-Filippetti v. Banco Popular de Puerto Rico, 504 F.3d 43, 49 (1st Cir, 2007) (citing Ortíz v. Levitt & Sons of P.R., Inc., 1 P.R. Offic Trans. 407, 101 P.R. Dec. 290 (1973)). Although the duty of care calls for the anticipation of reasonably probable injuries to probable victims, Marshall v. Pérez Arzuaga, 828 F.2d 845, 847 (1st Cir. 1987), "the foreseeability required under [Article] 1802 does not extend to all imaginable effects resulting from defendant's conduct. This would be tantamount to turning the defendant into an absolute insurer of its acts and omissions." Wojciechowicz, 576 F. Supp. 2d at 272. Therefore, a person breaches the duty of reasonable care only when his actions create reasonably foreseeable risks. Vazquez-Filippetti, 504 F.3d 43, 49.

       With these principles in mind, the Court turns to the facts of this case. As to Rimco's motion for summary judgment, the short answer is that the plaintiffs have shouldered their summary-judgment burden of showing that genuine issues of material facts exist as to whether Rimco was responsible for inspecting and maintaining the "day tanks" that malfunctioned — the apparent short-term cause of the spill. Accord Wells Real Estate Inv. Trust II, Inc. v. Chardón/Hato Rey P'ship, S.E., 615 F.3d 45, 58 (1st Cir. 2010). Specifically, insofar as Rimco's affidavits contradict the deposition testimony of the building engineers that "choice cannot be made under the banner of summary judgment." Mandel v. Boston Phoenix, Inc., 456 F.3d 198, 207 (1st Cir. 2006) (citation and internal quotation marks omitted). It is, moreover, incumbent upon the jury — and not this court — to discard (or adopt), based on the alleged contradictions in his deposition testimony, the conclusions reached by plaintiff's expert. See Quiñones-Pacheco v. Am. Airlines, Inc., 979 F.2d 1, 5 (1st Cir. 1992) ("In their deliberations,

jurors are permitted to draw reasonable inferences from the evidence and to assess the credibility of witnesses, including expert witnesses.").

Finally, Rimco's undeveloped argument (in a footnote, see Docket # 327, p. 2 n. 1) that the plaintiffs have "change[d] their liability theory" is way off the mark. As properly argued by the plaintiffs, a perfunctory review of the complaint, see Docket # 1, p. 11, shows that the averments against Rimco included an allegation regarding the disconnected "vent valve" from the "day tanks" in question. Accordingly, the complaint contains "the necessary factual averments . . . with respect to each material element of the underlying legal theory . . . ." Fleming v. Lind-Waldock & Co., 922 F.2d 20, 24 (1st Cir.1990). Compare Rios v. Municipality of Guaynabo, No. 10-1293, 2013 WL 1497287, at *12-13 (D.P.R. Apr. 12, 2013) (to be published in F.Supp.2d). No more is needed to deny Rimco's request for summary judgment.

The same conclusion follows with respect to ETS's motion for summary judgment. ETS argues that it (1) "follow[ed] its duty of care to prevent dust from contaminating the transformer before it was re-energized on February 9, 2008"; (2) "vacuumed the Transformer to prevent dust contamination before it was re-energized"; and (3) followed Federal Pacific's Instruction Manual. Docket # 328, pp. 8-10. Maybe so. But these fact-based defenses clearly implicate the weighing of the evidence, and a trial is the proper arena to gauge a witnesses' credibility. See Coyne v. Taber Partners I, 53 F.3d 454, 457 (1st Cir.1995). The upshot is that the argument that the plaintiffs lack evidence to prove ETS's alleged negligence is without merit. Here, the summary-judgment record shows that plaintiffs' expert determined that the transformer's malfunction was caused by ETS's failure to properly clean the transformer. See Docket # 337-4, p. 24.[1] And the plaintiffs have come forward with competent evidence to create a triable issue

---

[1] ETS's contention that Albert Rose's expert report "may not be considered when ruling on the Motion for Summary Judgment because it is not subject to penalty of perjury," Docket # 350, p. 3 is unavailing. Rose's deposition, in which ETS's counsel participated, see Docket # 337-17, p. 11:20-23,

regarding the reasonableness vel non of the maintenance ETS provided to the transformer. See, e.g., Vázquez-Filippetti v. Banco Popular de Puerto Rico, 504 F.3d 43, 49 (1st Cir. 2007). "So a judge cannot decide that issue on summary judgment unless the reasonableness or unreasonableness of what a party did or did not do is beyond dispute." Candelario Del Moral v. UBS Fin. Servs. Inc. of Puerto Rico, 699 F.3d 93, 104 (1st Cir. 2012). In short, whether ETS properly vacuumed the transformer (and whether the overall maintenance was adequate) is not "beyond dispute" here. As ETF has failed its burden on this front, this negligence determination is unamenable to disposition via summary judgment.

By like token, ETS's causation argument — while legally sound, cf. Valle, 8 P.R. Offic. Trans. 735 at 739-40 — cannot be resolved at the summary judgment stage. That is so because causation questions (and the concomitant issue of foreseeability) are ordinarily for the jury. See, e.g., Marshall 828 F.2d at 850-51 & n. 8. And, as correctly argued by the plaintiffs, the question whether the transformer's malfunction was the proximate cause of the spill does not "lead to but one conclusion." Staelens v. Dobert, 318 F.3d 77, 79 (1st Cir. 2003).

The Court acknowledges that this is a close call: A jury may well agree with ETS's arguments that "proximate cause is not proven if the defendant can show the occurrence of an intervening cause that was not foreseeable," Wojciechowicz v. United States, 582 F.3d 57, 67 (1st Cir. 2009), and that ETF's alleged improper maintenance on the transformer was too remote in time and in place from the spill to hold it accountable. But, viewed in the light most favorable to the plaintiffs and drawing all inferences in their favor (as the Court must), a jury could also reach a contrary conclusion: That ETS's involvement was remote neither in time nor in place

---

cured any such defects. See Maytag Corp. v. Electrolux Home Products, Inc., 448 F. Supp. 2d 1034 (N.D. Iowa 2006), aff'd, 224 Fed. Appx. 972 (Fed. Cir. 2007) (finding that expert could cure an unsworn expert report by being deposed and restating in the deposition the opinions in the unsworn report). ETS's other evidentiary challenges are also unpersuasive.

from the spill, and that the "day tanks" and "Tramont panel" malfunctions were not intervening causes. For instance, a jury could also find that components in large office buildings may malfunction in tandem. The evidence here, "though thin, point[s] in different directions; that is, it tend[s] to support conflicting inferences . . . ." Mandel, 456 F.3d at 207 (emphasis added); see also, e.g., Putnam Res. v. Pateman, 958 F.2d 448, 460 (1st Cir.1992) ( "When, as here, the existence of proximate cause turns on an issue of superseding causation . . . the jury's role may be especially significant."); Swift v. United States, 866 F.2d 507, 510 (1st Cir.1989) ("Application of the legal cause standard to the circumstances of a particular case is a function ordinarily performed by, and peculiarly within the competence of, the factfinder."). Thus, ETS's request for summary judgment is unwarranted.

**Conclusion**

In sum, the evidence of record shows "conflicting yet plausible inferences" that make summary judgment improper. Manganella v. Evanston Ins. Co., 702 F.3d 68, 73-74 (1st Cir. 2012). For these reasons, the motions for summary judgment are **DENIED**. Needless to say, ETS's request for attorney's fees, whose success depends on the merits of ETS's motion for summary judgment, is also **DENIED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 19th day of June, 2013.

*S/ Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge